# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SUEANN BECK,

    *Plaintiff,*

vs.

Case No. 18-1308-EFM-TJJ

FIGEAC AERO NORTH
AMERICAN, INC.,

    *Defendant.*

## MEMORANDUM AND ORDER

This case involves a motion to dismiss for failure to state a claim for which relief can be granted made by Figeac Aero North American, Inc. ("Figeac"). SueAnn Beck alleges her employer, Figeac, discriminated against her on the basis of her American national origin. For the following reasons, the Court concludes that Beck has adequately alleged that Figeac violated Title VII under the following theories: creating a hostile work environment, retaliation, and constructive discharge. However, Beck has not stated a claim that Figeac failed to conciliate because employers do not have a duty to conciliate. Therefore, Figeac Aero North American, Inc.'s motion to dismiss (Doc. 6) is granted in part and denied in part.

## I. Factual and Procedural Background[1]

Beck worked as a buyer for Figeac from January to April, 2017. Beck, who is American, alleges that during that time her manager, Hocine Benaoum, who is French, referred to some employees as "stupid Americans," referred to American employees as "f*cking stupid," and referred to one employee as "nothing but a God D*mned American buyer." Beck alleges that Benaoum displayed violent tendencies toward American employees but not French employees, stating that Benaoum would regularly "strike tables, walls, and other things while screaming at American employees." Finally, Beck alleges that Benaoum placed "unworkable expectations on American employees, but not French employees." Beck never specifies how many of the employees under Benaoum's supervision were American, French, or some other nationality.

Beck complained to the company's Human Resources Department ("HR") multiple times about Benaoum's conduct. According to Beck, the HR representative "acknowledged the harassment and the discrimination towards Americans" but told Beck "that's just the way [Benaoum] is." Subsequently, on April 7, Figeac placed Beck on probation. Beck alleges the probation was "in retaliation for her complaints" against Benaoum. In response to being placed on probation, Beck quit her job with Figeac later that day.

Beck states that she has "exhausted all necessary administrative remedies." She also states that the Kansas Human Rights Commission investigated her claims and determined that Figeac "discriminated against [Beck] on the basis of her national origin" and "retaliated against [Beck] for complaining about discrimination."

---

[1] The facts are taken from Beck's Complaint and are accepted as true for the purposes of this ruling.

Beck's Complaint alleges that Figeac discriminated against her based on her American national origin in violation of Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination by creating a hostile work environment. Beck alleges that when Figeac gave her probation, it was retaliating against her in violation of Title VII. Beck alleges Figeac constructively discharged her by issuing the probation and creating an extremely hostile work environment. Beck further alleges that Figeac "failed to conciliate its unlawful conduct." Figeac moves to dismiss all claims for failure to state a claim upon which relief can be granted.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[5] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6] Viewing the complaint in this manner, the court must decide whether the

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] Iqbal, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); see also Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678-79.

plaintiff's allegations give rise to more than speculative possibilities.[7] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[8]

### III. Analysis

Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination prohibit employment discrimination based on national origin that deprives or adversely affects an employee's status.[9] Claims under Title VII are subjected to the burden-shifting framework from *McDonnell Douglas Corporation v. Green*.[10] Under this framework, the plaintiff must first establish a prima facie case of discrimination.[11] If the plaintiff makes this initial showing, the burden shifts to the defendant to give a nondiscriminatory reason for the challenged actions.[12] If the defendant is able to provide a nondiscriminatory reason, the burden shifts back to the plaintiff to show the reason the defendant gave is a mere pretext for discrimination.[13] Here, Figeac argues Beck has failed to state a prima facie case on all of her claims.

As an initial matter, Figeac argues that Title VII does not prohibit "reverse" national origin discrimination against Americans. The Court disagrees. Title VII prohibits discrimination on the

---

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] 29 C.F.R. § 1606.2; 42 U.S.C. § 2000e-2(a), (b); K.S.A. 44-1001.

[10] 411 U.S. 792, 802–804 (1973); *see also Douglas v. JC Penny Logistics Ctr.*, 2010 WL 5139856, at *4 (D. Kan. 2010).

[11] *McDonnell Douglas*, 411 U.S. at 802–04.

[12] *Id.*

[13] *Id.*

basis of a person's national origin, which is where the person was born or where her ancestors came from.[14] Although Title VII's purpose is to erase disadvantage of minorities, so called "reverse discrimination" or discrimination against the majority is also prohibited.[15] Granted, the Court is unaware of any binding authority that has addressed reverse discrimination in the context of national origin discrimination claims; courts have allowed Title VII reverse discrimination claims in other contexts and the Court concludes that the same reasoning applies here.[16] A party claiming reverse discrimination must bring sufficient background evidence to show (1) the employer is abnormal in that it discriminates against the majority or (2) but for the plaintiff's status, the challenged actions would not have occurred.[17]

Beck has brought enough factual allegations to plausibly claim that she is protected by Title VII. The complaint adequately alleges that Benaoum discriminated against Americans because of the disparaging remarks he made and the violent tendencies he portrayed. According to the complaint, HR indicated it knew of and would not do anything about Benaoum's discriminatory behavior. Assuming that is true, Figeac was complicit Benaoum's discriminatory conduct. Based on these facts, it is plausible that Figeac is an abnormal employer because it discriminates against the majority. Having determined that Beck can bring a Title VII claim for

---

[14] *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 88 (1973).

[15] *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976) (holding Title VII prohibits discrimination against the majority as well as the minority).

[16] *See McDonald*, 427 U.S. at 278–79 (allowing Title VII claims for reverse race discrimination); *Douglas*, 2010 WL 5139856 at *4–5 (allowing Title VII claims for reverse gender discrimination); *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (allowing Title VII claims for reverse gender discrimination); *see also Notari v. Denver Water Dep't*, 971 F.2d 589–90 (allowing Title VII claims for reverse race discrimination) (10th Cir. 1992).

[17] *Douglas*, 2010 WL 5139856 at *4–5; *see also Notari,* 971 F.2d at 589–90 (10th Cir. 1992); *Argo,* 452 F.3d at 1201 (10th Cir. 2006).

national origin discrimination, the Court will now consider Beck's four claims, specifically: hostile work environment, retaliation, constructive discharge, and failure to conciliate.

A.   Hostile Work Environment

After showing she is protected under Title VII, Beck must show: (1) she was subject to unwelcome harassment, (2) the harassment was based on the her national origin, and (3) the harassment was so severe or pervasive that it changed the terms, conditions, or privileges of her employment and created an abusive work environment .[18]  To be the subject of harassment, a plaintiff does not need to show the discriminatory conduct was directed at the plaintiff but only that the plaintiff observed the conduct.[19]  The conduct requires more than "run-of-the-mill boorish, juvenile, or annoying behavior"—rather, severe discriminatory conduct must permeate the workplace.[20]  The Court must look at all the circumstances to determine the harassment's severity, including: frequency of the conduct and whether the conduct is physically threatening or humiliating rather than a mere utterance.[21]

Beck has brought enough factual allegations to plausibly claim hostile work environment under Title VII.  Although it is unclear from Beck's allegations how frequently Benaoum displayed

---

[18] *Unal v. Los Alamos Public Schools*, 638 Fed.App'x. 729, 735–36 (10th Cir. 2016).

[19] *Id.* at 735 (citing *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1146 (10th Cir. 2008)); *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957–58 (10th Cir. 2012); *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 798 (10th Cir. 2007) ("We have never held, nor would we, that to be subjected to a hostile work environment the discriminatory conduct must be both directed at the victim and intended to be received by the victim."); *see also Ramirez v. GEO Group, Inc.*, 655 F.Supp.2d 1170, 1182 (D. Colo. 2009) (explaining plaintiff must have at least heard the defendant's foul language herself).

[20] *Morris v. City of Colorado Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 851 (10th Cir. 2007)); *see also Jones v. Barnhart*, 349 F.3d 1260, 1268 (10th Cir. 2003) (holding that a plaintiff must assert more than a few isolated incidents).

[21] *Harris v. Forklift Systems, Inc.*, 510 U.S. at 23 (1993).

his discriminatory conduct, it was evidently frequent enough that Figeac's HR representative recognized the manager would harass and discriminate against Americans. Additionally, during Beck's approximately three-month employment, Beck noted multiple instances of Benaoum's disparaging remarks and noted regular instances of the violent conduct. This suggests the conduct complained of was ongoing rather than isolated incidences. If Benaoum hit tables, walls, and other things while screaming at Americans, he was physically threatening. Furthermore, it is certainly plausible that the conduct was based on national origin because Beck alleges Benaoum yelled at and physically threatened American employees only. Therefore, the Court denies Figeac's motion to dismiss Beck's hostile work environment claim.

B.   Retaliation

Title VII prohibits employer retaliation when an employee has opposed an employment practice prohibited by Title VII.[22] To state a prima facie case for retaliation, Beck must show: (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would find the challenged action materially adverse, and (3) the protected opposition caused the materially adverse action.[23] The term "oppose" has the ordinary meaning as to resist, confront, or contend against.[24] Communication by an employee to an employer that the employee believes the employer has engaged in employment discrimination is almost always opposition.[25] Protected opposition requires that the plaintiff reasonably believed she was opposing an unlawful act

---

[22] 42 U.S.C. § 2000e-3(a).

[23] *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *Argo*, 452 F.3d at 1202 (applying the test to allegations of reverse discrimination).

[24] *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 276 (2009) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

[25] *Id.*

prohibited by Title VII.[26] A reasonable employee will find the action materially adverse when the action might dissuade the reasonable worker from making or supporting a discrimination claim.[27] Figeac has only argued that Beck failed to bring facts to plausibly claim the first two elements.

The Court concludes that Beck has stated a plausible claim of retaliation. First, Beck alleges she complained to HR about Benaoum's discriminatory conduct which is a communication from employee to employer that the employer has engaged in employment discrimination. Furthermore, Beck believed Benaoum's conduct was prohibited by Title VII. So, when Beck complained to HR, the complaint was a protected opposition to discrimination. Second, when Beck received probation, this was materially adverse action. Figeac argues receiving probation is a mere warning which does not constitute a materially adverse action. The Court disagrees because probation is a negative disciplinary action an employer can take to dissuade an employee.[28] A reasonable employee might be dissuaded from making or supporting a discrimination claim by receiving probation. Therefore, the Court denies Figeac's motion to dismiss Beck's retaliation claim.

---

[26] *See Crumpacker v. Kansas Dept. of Human Resources*, 338 F.3d 1163, 1171 (10th Cir. 2003); *see also Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (cited in Defendant's motion); *see also Bennett v. Wilson Senior Care, Inc.,* 2018 WL 4443118, at *4 (D.S.C. Sept. 18, 2018) (holding plaintiff complaining of discriminatory acts based on sex was a protected opposition under Title VII) (cited in Defendant's motion).

[27] *Thompson v. North American Stainless, LP*, 562 U.S. 170, 174 (2011); *Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, 192 F. Supp. 3d 1230, 1249 (D. Kan. 2016) (suggesting the standard for retaliation is lower than that for hostile work environment) (citing *Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 245 (N.D.N.Y. 2010) (holding giving a plaintiff probation could constitute materially adverse action).

[28] *See Sharpe*, 756 F. Supp. 2d at 245.

C.  Constructive Discharge

Proving constructive discharge requires more offensive and severe work conditions than a hostile work environment claim.[29] A plaintiff must show that a reasonable person would be compelled to resign due to conditions that were objectively intolerable created by the illegal discriminatory conduct of the employer.[30] In addition, the plaintiff must have actually resigned.[31] Intolerability is an objective standard, so a plaintiff's subjective view of the work condition is irrelevant.[32] Proving the "objective intolerability" standard requires the plaintiff meet a high burden of proof in showing she had no reasonable choice but to quit.[33] However, whether the choice to quit was voluntary is a question of fact that cannot be decided during the pleading stage.[34]

Beck has stated a plausible claim for constructive discharge. First, Beck resigned after receiving probation. Additionally, Beck alleges she heard Benaoum make profane disparaging comments about American employees. Benaoum allegedly displayed physically violent tendencies. Furthermore, Beck alleges she received probation in retaliation to complaining of Benaoum's discriminatory conduct. These facts, assumed as true, might make a reasonable employee feel compelled to resign. However, the question of whether these facts would have

---

[29] *Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dep't of Labor*, 717 F.3d 1121, 1134 (10th Cir. 2013)

[30] *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146–47 (2004); *see also Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017).

[31] *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016).

[32] *Hiatt*, 858 F.3d at 1318 (holding that requiring plaintiff to work two extra hours each week, turn in case notes on time, and explain sick time was not an objectively intolerable working environment) (citing *Bennett v. Windstream Commc'ns., Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015)).

[33] *See Steele v. City of Topeka,* 2014 WL 3734185, at *2 (D. Kan. 2014); *Windstream*, 792 F.3d at 1269 (citing *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir.2004)).

[34] *Steele*, 2014 WL 3734185 at *3.

made a reasonable employee resign is to be decided later in litigation. Therefore, the Court denies Figeac's motion to dismiss Beck's constructive discharge claim because Beck has plausibly pleaded a claim for constructive discharge.

D.    Failure to Conciliate

Beck has not stated a claim for which relief can be granted for failure to conciliate. Under 42 U.S.C.A. § 2000e-5 and 29 C.F.R. § 1601.24(a) the EEOC must attempt to eliminate discriminatory employment conduct by conference, conciliation, and persuasion before bringing a lawsuit against an employer.[35] Employers do not have a duty to conciliate.[36] Beck has made a complaint against her former employer Figeac and no other party. Therefore, because Figeac did not have a duty to conciliate, the Court dismisses beck's claim that Figeac did not conciliate.

**IT IS THEREFORE ORDERED** that Figeac Aero North American, Inc.'s Motion to Dismiss (Doc. 6) is **GRANTED IN PART, DENIED IN PART**

**IT IS SO ORDERED.**

Dated this 27th day of June, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[35] 42 U.S.C.A. § 2000e-5; 29 C.F.R. § 1601.24(a).

[36] *See Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct. 1645, 1651 (2015).